IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMAS YERANSIAN, in his capacity as the representative of holders of certain contingent value rights under the Contingent Value Rights Agreement dated October 15, 2010,<br><br>     Plaintiff,<br><br>  v.<br><br>MARKEL CORPORATION, a Virginia corporation; B. RILEY & CO., LLC, a Delaware Limited Liability Company, now merged with and known as B. RILEY FBR, INC.; FBR CAPITAL MARKETS & CO., a Delaware Corporation, now merged with and known as B. RILEY FBR, INC.; and B. RILEY FBR, INC., a Delaware Corporation,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 20-762 (MN)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Laurence V. Cronin, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, DE; James D. Sherrets, Diana J. Bogt, SHERRETS BRUNO & VOGT, LLC, Omaha, NE – Attorneys for Plaintiff

John M. Seaman, ABRAMS & BAYLISS LLP, Wilmington, DE; Kristine Maher, Thomas Prewitt, GRAYDON HEAD & RITCHEY LLP, Cincinnati, OH – Attorneys for Defendant Markel Corporation

Russell C. Silberglied, Travis S. Hunter, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Joseph M. Pastore, III, PASTORE & DAILEY LLC, Stamford, CT – Attorneys for Defendants B. Riley & Co, LLC, FBR Capital Markets & Co., and B. Riley FBR, Inc.

March 16, 2021
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court are the motion to dismiss of Defendants B. Riley & Co., LLC, FBR Capital Markets & Co., and B. Riley FBR, Inc. (collectively, "B. Riley" or "the B. Riley parties") (D.I. 24) and the motion to stay and for contempt and sanctions of Defendant Markel Corporation ("Markel") (collectively, with B. Riley, "Defendants") (D.I. 8). Plaintiff Thomas Yeransian ("Plaintiff") opposes both motions. (D.I. 26, 10). Having reviewed the parties' briefing on the motion to dismiss, (*see* D.I. 25, 26, 30), B. Riley's motion to dismiss is GRANTED and the B. Riley parties are dismissed. Having reviewed the parties' briefing on the motion to stay, (*see* D.I. 9, 10, 14), Markel's motion to stay is GRANTED-IN-PART and DENIED-IN-PART and this case is STAYED pending resolution of arbitration proceedings now underway in a related case pending before this Court.

I.   **BACKGROUND**

   A.   **Factual Background[1]**

This case dates back to Markel's acquisition of Aspen Holdings, Inc. ("Aspen") in a deal that closed in October 2010 with an effective date of December 31, 2009. (D.I. 20 ¶ 30).[2] Prior to the Markel/Aspen merger, Aspen had retained FBR Capital Markets & Co., one of the B. Riley parties, to act as a broker and seek out potential investors for Aspen. (*Id.* ¶ 32). The Engagement Agreement ("the Engagement Agreement") between Aspen and B. Riley provided that B. Riley would arrange a sale of securities and serve as a financial advisor for Aspen, and that "all advice (written or oral) given by [B. Riley] to [Aspen] is intended solely for the benefit and use of the

---

[1]   The facts recited are those alleged by Plaintiff in the Amended Complaint (D.I. 20).

[2]   Citations to D.I. numbers without reference to case name or case number are used to indicate docket entries in this case – *i.e.*, *Yeransian v. Markel Corp.*, No. 20-762-MN.

1

Company (including its management, directors, attorneys, accountants, and advisors)." (D.I. 20, Ex. B at 1–2). In exchange, B. Riley would receive 1.25 percent of the aggregate consideration paid to Aspen in a sale or merger. (*Id.* at 3). On July 8, 2010, B. Riley delivered a Fairness Opinion ("the Fairness Opinion") to Aspen which addressed a proposed merger with Markel. (*See generally* D.I. 20, Ex. C).

When the Markel/Aspen merger closed in October 2010, Markel paid $135.7 million in cash and created a Contingent Value Rights Agreement ("the CVR Agreement"). (D.I. 20 ¶ 46). Under the CVR Agreement, Aspen's shareholders ("the CVR Holders") were entitled to additional consideration to be paid over five or eight years based on the decision of the CVR Holders and the value determined after five years. (*Id.* ¶ 47).

**B.     Prior Litigation Before This Court**

On September 15, 2016, Plaintiff filed a first lawsuit in this District against Markel, alleging, *inter alia*, breach of contract based on Markel's purported failure to comply with Section 3.2 of the CVR Agreement. (*See* Complaint ¶¶ 28-43, *Yeransian v. Markel Corp.*, No. 16-00808-MN (D. Del. Sept. 15, 2016) (D.I. 1); *see also* First Amended Complaint, *Yeransian v. Markel Corp.*, No. 16-00808-MN (D. Del. June 21, 2017) (D.I. 54)). The first lawsuit, *Yeransian v. Markel Corp.*, No. 16-808-MN (D. Del. filed Sept. 15, 2016) (hereinafter "the 2016 case"), is currently stayed pending resolution of arbitration proceedings being conducted by independent experts ("the Independent Experts") pursuant to Section 3.2(d) of the CVR Agreement. (*See* D.I. 65 in C.A. No. 16-808).[3]

---

[3]     Defendant's related countersuit was also stayed pending this arbitration. (*See* D.I. 40 in C.A. No. 16-1041).

On November 9, 2018, Plaintiff filed a second related action against Markel, *Yeransian v. Markel Corp.*, No. 18-1777-MN (D. Del. filed Nov. 9, 2018) (hereinafter "the 2018 case"). The 2018 case alleged, *inter alia*, breach of contract based on Defendant's purported failure to comply with certain requirements under Section 9.3 of the CVR Agreement. (*See* D.I. 1 ¶¶ 52–54 in C.A. No. 18-1777). Both the 2016 case and the 2018 case asserted causes of action arising out of the same CVR Agreement and, in both cases, Plaintiff alleged that Markel breached the CVR Agreement, (*compare* D.I. 1 ¶¶ 52–54 in C.A. No. 18-1777 *with* D.I. 1 ¶¶ 28–43 in C.A. No. 16-808), and breached a fiduciary duty owed to the CVR Holders under the CVR Agreement. (*Compare* D.I. 1 ¶¶ 55–60 in C.A. No. 18-1777 *with* D.I. 54 ¶¶ 84–87 in C.A. No. 16-808). Thus, the 2018 case was also stayed pending resolution of the arbitration proceedings underway in the 2016 case. (*See* D.I. 12 in C.A. No. 18-1777). The 2018 case remains stayed.

### C. Prior Litigation in the Eighth Circuit

On May 23, 2018, Plaintiff filed an Amended Complaint in a Nebraska state court action against the B. Riley parties.[4] (*See* Notice of Removal ¶ 1, *Yeransian v. B. Riley & Co.*, No. 8:18-cv-00304-RFR-SMB (D. Neb. June 27, 2019) (D.I. 1)). On June 27, 2018, B. Riley removed that action to the United States District Court for the District of Nebraska. *Yeransian v. B. Riley & Co.*, No. 18-cv-304 (D. Neb. June 27, 2018) (hereinafter "the Nebraska case"). The Nebraska case alleged, *inter alia*, that in compiling the Fairness Opinion B. Riley breached a fiduciary duty owed to Aspen, (Am. Cmpl. ¶¶ 25–29, *Yeransian v. B. Riley & Co.*, No. 8:18-cv-00304-RFR-SMB

---

[4] On a motion to dismiss, a court "may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). *See also Cephas v. Int'l Longshoremen's Ass'n*, No. 16-CV-316 (RGA), 2017 WL 2782201, at *1 (D. Del. Mar. 1, 2017) ("In evaluating a motion to dismiss, a court may consider . . . matters of public record").

3

(D. Neb. June 27, 2019) (D.I. 1-1)), and misrepresented material facts to Aspen, (*id.* ¶¶ 47–63). The Nebraska case also sought disgorgement of fees paid to B. Riley as a result of the Markel/Aspen merger, (*id.* ¶¶ 30–38), and a declaratory judgment that B. Riley could not enforce the Engagement Agreement to collect further fees, (*id.* ¶¶ 22–24).

B. Riley moved to dismiss the Nebraska case, arguing that Plaintiff did not have standing to bring the alleged claims, (Br. Supp. Mot. Dismiss, *Yeransian v. B. Riley & Co.*, No. 8:18-cv-00304-RFR-SMB (D. Neb. July 19, 2018) (D.I. 9)), and the Nebraska case was dismissed without prejudice for lack of subject matter jurisdiction on November 14, 2018, (Mem. & Order, *Yeransian v. B. Riley & Co.*, No. 8:18-cv-00304-RFR-SMB (D. Neb. Nov. 14, 2018) (D.I. 21)).  On December 11, 2018, Plaintiff moved for reconsideration of the dismissal or, in the alternative, to file a new complaint in the Nebraska case.  (Mot. File 2d Am. Compl., *Yeransian v. B. Riley & Co.*, No. 8:18-cv-00304-RFR-SMB (D. Neb. Dec. 11, 2018) (D.I. 25)).  The court denied the motion for undue delay, noting that Plaintiff made no attempt to amend his complaint in the four months between the filing of the motion to dismiss and the court's decision and, even after dismissal, neglected to act for almost a month.  *See Yeransian v. B. Riley & Co., LLC*, No. 8:18CV304, 2019 WL 252029, at *2 (D. Neb. Jan. 17, 2019), *aff'd sub nom. Yeransian v. B. Riley FBR, Inc.*, 984 F.3d 633 (8th Cir. 2021).  Plaintiff appealed the district court's decision on February 13, 2019.  (Notice of Appeal, *Yeransian v. B. Riley & Co.*, No. 8:18-cv-00304-RFR-SMB (D. Neb. Feb. 13, 2019) (D.I. 30)).  On January 4, 2021, the Eighth Circuit affirmed the decision of the District of Nebraska, holding that Plaintiff lacked standing in the Nebraska case. *Yeransian v. B. Riley FBR, Inc.*, 984 F.3d 633, 636–37 (8th Cir. 2021).

### D. Procedural Background of This Action

While the Eighth Circuit appeal was pending, Plaintiff filed the present case. (D.I. 1). The Amended Complaint was filed on August 31, 2020, seeking, *inter alia*, a declaratory judgment to determine what fees, if any, are owed to B. Riley based on the Engagement Agreement. (D.I. 20 ¶¶ 168–77). The Amended Complaint also raises three other claims against B. Riley, all of which are related to the Engagement Agreement and Fairness Opinion: unjust enrichment based on fees owed to B. Riley, (*id.* ¶¶ 178–92), breach of fiduciary duty owed to Aspen, (*id.* ¶¶ 193–208), and misrepresentation of material facts, (*id.* ¶¶ 209–16).

The Amended Complaint raises two claims against Markel which are related to the Markel/Aspen merger and CVR Agreement: breach of contract for failing to comply with the CVR Agreement, (D.I. 20 ¶¶ 117–29), and fraudulent misrepresentation prior to the filing of the 2016 case, (*id.* ¶¶ 130–38). Plaintiff also raises several claims which are directly related to the other pending cases before this Court or the arbitration underway in the 2016 case. The Amended Complaint raises a claim of breach of fiduciary duty based on misrepresentations to the Court in prior litigation. (*Id.* ¶¶ 145–48). Plaintiff further alleges that Markel has manipulated the result of the Independent Experts' valuation and seeks an accounting of the final amount of the contingent value rights, (*id.* ¶¶ 139–44), a declaratory judgment regarding the meaning of certain terms in the CVR Agreement and whether those terms are being adequately addressed by the Independent Experts, (*id.* ¶¶ 149–55), and an injunction preventing Markel from distributing the amount calculated by the Independent Experts before all issues, including possible appeals, are fully resolved, (*id.* ¶¶ 156–67).

Markel filed the pending motion to stay on June 25, 2020. (D.I. 8). B. Riley filed the pending motion to dismiss on September 21, 2020. (D.I. 24).

## II. LEGAL STANDARD

### A. Standard Pursuant to Rule 12(b)(1)

"Standing is a jurisdictional matter and thus 'a motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1).'" *Susinno v. Work Out World, Inc.*, No. 15-5881 (PGS), 2017 WL 5798643, at *1 (D.N.J. Nov. 28, 2017). "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). A facial challenge contests the sufficiency of the pleadings, whereas a factual challenge contests the sufficiency of jurisdictional facts. *Id.* In reviewing a facial challenge, the Court considers only the allegations in the complaint and any documents referenced in or attached to the complaint, in the light most favorable to the plaintiff. *See Church of Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008). In contrast, when reviewing a factual challenge, the Court may weigh and consider evidence outside the pleadings. *See Davis v. Wells Fargo*, 824 F. 3d 333, 346 (3d Cir. 2016); *see also Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In a factual challenge, "no presumptive truthfulness attaches to plaintiffs' allegations." *Davis*, 824 F.3d at 346 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

### B. Standard Pursuant to Rule 12(b)(6)

When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210–11. Second, the Court determines "whether the facts alleged in the

6

complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Fowler*, 578 F.3d at 210. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

      C.      **<u>Standard for Motion to Stay</u>**

In deciding whether a stay of litigation is appropriate, the Court typically considers the following three factors: "(1) whether a stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage." *Siemens Indus., Inc. v. Westinghouse Air Brake Techs. Corp.*,

No. 16-284-LPS, 2018 WL 3046511, at *1 (D. Del. June 20, 2018). Whether to stay litigation is a matter committed to the Court's discretion. *See Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990).

### III. DISCUSSION

#### A. Motion to Dismiss

B. Riley argues that the claims against it ("the B. Riley claims") should be dismissed for four reasons: (1) the doctrine of res judicata applies because there was a final judgment in the Nebraska case; (2) Plaintiff does not have standing to alter payment to B. Riley under an agreement between B. Riley and Aspen or to assert Aspen's rights under that agreement; (3) Plaintiff has not alleged a legally protected interest and has specifically alleged that he has not suffered damages; and (4) the B. Riley claims are barred by the statute of limitations. (D.I. 25 at 3). The Court can decide B. Riley's motion by addressing just two of the asserted grounds.

##### 1. Res Judicata

The doctrine of res judicata, or claim preclusion, "acts as a bar to relitigation of an adjudicated claim between parties and those in privity with them." *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 392 (3d Cir. 2002) (internal citations omitted). The doctrine bars not only claims that were brought in a previous action, but also claims that could have been brought. *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (internal citation omitted). Res judicata applies when there has been (1) a final judgment on the merits in a prior lawsuit involving; (2) the same parties or their privies; and (3) a subsequent suit based on the same cause of action. *Nayak v. McNees Wallace & Murick LLC*, 700 F. App'x 172, 175 (3d Cir. 2017) (citing *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)). "Precluding 'parties from contesting matters that they have had a full and fair opportunity to litigate protects their

8

adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id*. (quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979)).

There was a final judgment on the merits in the Nebraska case. The Third Circuit has held that "[f]or *res judicata* purposes, denial of a motion to amend a complaint in one action is a final judgment on the merits barring the same complaint in a later action." *McKenna v. City of Philadelphia*, 304 F. App'x 89, 93 (3d Cir. 2008) (internal quotations omitted). In Plaintiff's Nebraska case against B. Riley, the district court dismissed Plaintiff's complaint and then denied his motion to file a second amended complaint. *See* Mem. & Order, *Yeransian v. B. Riley & Co.*, No. 8:18-cv-00304-RFR-SMB (D. Neb. Nov. 14, 2018) (D.I. 21), *Yeransian v. B. Riley & Co., LLC*, No. 8:18CV304, 2019 WL 252029, at *2 (D. Neb. Jan. 17, 2019), *aff'd sub nom. Yeransian v. B. Riley FBR, Inc.*, 984 F.3d 633 (8th Cir. 2021). Thus, under Third Circuit law, the dismissal of the Nebraska case was a final judgment on the merits.

Moreover, there is no dispute that the B. Riley claims involve the same parties as the Nebraska case.[5] Thomas Yeransian was the sole plaintiff in both cases, and the defendants in the Nebraska case – B. Riley & Co., LLC, FBR Capital Markets & Co., and B. Riley FBR, Inc. – are named Defendants in this case as well. (*Compare* Notice of Removal, *Yeransian v. B. Riley & Co.*, No. 8:18-cv-00304-RFR-SMB (D. Neb. June 27, 2019) (D.I. 1) *with* D.I. 20). Although Markel was not a named party to the Nebraska case, the motion to dismiss does not address the claims asserted against Markel. (*See* D.I. 25 at 10). Thus, the second element of res judicata is met.

---

[5] Plaintiff does not argue that the same parties are not involved. (*See* D.I. 26 at 15–17).

Finally, the B. Riley claims are based on the same cause of action as the Nebraska case. The Third Circuit takes a broad view of what constitutes the same cause of action, focusing on "the *essential similarity* of the underlying events giving rise to the various legal claims." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) (emphasis in original). Courts consider four factors: "(1) whether the acts complained of and the demand for relief are the same; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same; and (4) whether the material facts alleged are the same." *Id.* Both the Nebraska case and the B. Riley claims rely on the same facts: B. Riley's conduct and its potential claims for fees in connection with the Markel/Aspen merger. (*Compare* Am. Cmpl. ¶¶ 7–8, 11–20, *Yeransian v. B. Riley & Co.*, No. 8:18-cv-00304-RFR-SMB (D. Neb. June 27, 2019) (D.I. 1-1) *with* D.I. 20 ¶¶ 32, 36, 38, 44, 56–60, 65).

The two sets of claims also assert the same theories of recovery. Both cases seek a declaratory judgment related to B. Riley's right to collect further fees. (*Compare* Am. Cmpl. ¶¶ 22–24, *Yeransian v. B. Riley & Co.*, No. 8:18-cv-00304-RFR-SMB (D. Neb. June 27, 2019) (D.I. 1-1) *with* D.I. 20 ¶¶ 158–77). Both the Nebraska case and this case also allege that B. Riley breached a fiduciary duty which it owed to Aspen, (*compare* Am. Cmpl. ¶¶ 22–29, *Yeransian v. B. Riley & Co.*, No. 8:18-cv-00304-RFR-SMB (D. Neb. June 27, 2019) (D.I. 1-1) *with* D.I. 20 ¶¶ 193–208), that B. Riley misrepresented material facts to Aspen, (*compare* Am. Cmpl. ¶¶ 47–63, *Yeransian v. B. Riley & Co.*, No. 8:18-cv-00304-RFR-SMB (D. Neb. June 27, 2019) (D.I. 1-1) *with* D.I. 20 ¶¶ 209–16), and that B. Riley has been unjustly enriched by and should disgorge the fees it has collected, (*compare* Am. Cmpl. ¶¶ 30–38, *Yeransian v. B. Riley & Co.*, No. 8:18-

cv-00304-RFR-SMB (D. Neb. June 27, 2019) (D.I. 1-1) *with* D.I. 20 ¶¶ 178–92).  Thus, the B. Riley claims are based on the same cause of action as the Nebraska case.[6]

Because the B. Riley claims are based on the same cause of action as a prior lawsuit involving the same parties in which there was a final judgment on the merits, they are barred by the doctrine of res judicata and are therefore dismissed with prejudice.

        2.      Lack of Standing

Even if res judicata did not preclude the B. Riley claims, Plaintiff's lack of standing would nonetheless require this Court to dismiss B. Riley.

Before turning to the parties' specific arguments as to standing, this Court must determine whether the challenge to subject matter jurisdiction is a facial or factual attack because that classification determines how the pleading is to be reviewed.  *See Const. Party Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).  In its opening brief, B. Riley asserted that it made a factual challenge to subject matter jurisdiction.  (D.I. 25 at 12 n.13).  In response, Plaintiff argued that a factual attack "can be brought only after the Plaintiff's facts have been controverted by the filing of an answer or a sworn statement of facts" and that, because B. Riley had filed neither, its motion to dismiss must be a facial attack.  (D.I. 26 at 6).  B. Riley responded by asserting that it made no distinction between a facial and factual attack, and that its motion to dismiss should be granted regardless of its classification.  (D.I. 30 at 5).

The Third Circuit has established that a motion under Rule 12(b)(1) made before the movant filed an answer to the complaint or otherwise presented competing facts is, by definition,

---

[6] The Eighth Circuit also noted that this case is based on the same cause of action as the Nebraska case, stating that "[r]ather than wait for an opinion in this case, Yeransian filed substantially the same claims against FBR in Delaware.  Needless to say, we do not look favorably on these duplicative litigation tactics." *Yeransian v. B. Riley FBR, Inc.*, 984 F.3d 633, 636 n.2 (8th Cir. 2021) (internal citation omitted).

11

a facial attack. *Const. Party Pa.*, 757 F.3d at 358. B. Riley has neither filed an answer in this case, nor presented a competing statement of facts in support of its motion to dismiss. Thus, the Court will treat this motion as a facial challenge and is required to consider only the allegations in the complaint and any documents referenced in or attached to the complaint, in the light most favorable to the plaintiff. *See Church of Universal Bhd.*, 296 F. App'x at 288.

Standing to sue is a constitutional prerequisite to maintaining an action in federal court. To establish standing in accordance with Article III of the Constitution, the party bringing the action must demonstrate: (1) an injury in fact (an invasion of a legally protected interest that is concrete and particularized and actual or imminent); (2) a causal connection between the defendant's action and the injury (that the injury is fairly traceable to the defendant's alleged unlawful conduct); and (3) redressability (that the injury is likely to be redressed by the relief requested). *See Hein v. Freedom Religion Found., Inc.,* 551 U.S. 587 (2007); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561 (1992). Article III standing must be present at the time the party brings suit, *see Lujan,* 504 U.S. at 570 n.5, and cannot be conferred by agreement of the parties, *see Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 95 (1998).

B. Riley argues that Plaintiff lacks standing because the B. Riley claims are based on the Engagement Agreement, and Plaintiff is neither the "real party in interest" to that agreement as is required by Rule 17(a) of the Federal Rules of Civil Procedure nor a third-party beneficiary to the Engagement Agreement. (*See* D.I. 25 at 11–13). In response, Plaintiff asserts that he is protecting the CVR Holders' "right to receive cash" under the CVR Agreement, and that excess payments to B. Riley would reduce the amount available to the CVR Holders, thereby injuring the CVR Holders. (D.I. 26 at 11). Plaintiff further argues that the CVR Holders are intended third-party

beneficiaries to the Engagement Agreement and CVR Agreement, which gives Plaintiff standing to assert the B. Riley claims. (*Id.* at 13–15).

Plaintiff's claim that he has standing to assert a "right to receive cash" fails. First, Plaintiff cites no cases in support of his theory that a contract claim against one entity gives him standing to prevent a third party from collecting its own payments from that entity. Second, assuming Plaintiff has a legally protected interest in the amounts he contends are owed by Markel, he nonetheless has not suffered an "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016) (internal quotations omitted). He has not yet received any potentially insufficient payments from Markel and the amount owed has not been determined by the Independent Experts. Third, even if Plaintiff had suffered an injury-in-fact, there would not be an adequate causal connection between B. Riley's actions and Plaintiff's injuries. The receipt of inadequate payments ***from Markel*** would not be fairly traceable to B. Riley's assertion of competing claims. Thus, Plaintiff does not have standing based on a so-called "right to receive cash."

Plaintiff's argument that he has standing as a third-party beneficiary to the Engagement Agreement and CVR Agreement also fails. Plaintiff asserts, and B. Riley does not dispute, that that the Engagement Agreement is governed by Virginia law while the Merger Agreement and CVR Agreement are governed by Delaware law. At this stage, this Court will assume those assertions are correct. Under both Virginia and Delaware law, an intended third-party beneficiary to a contract has standing to sue but an incidental beneficiary does not. *See Thorsen v. Richmond Soc'y for the Prevention of Cruelty to Animals*, 292 Va. 257, 273 (2016), *Comrie v. Enterasys Networks, Inc.*, No. CIV. A. 19254, 2004 WL 293337, at *2 (Del. Ch. Feb. 17, 2004).

13

As to the CVR Agreement, B. Riley is not a party to that agreement and therefore is not bound by it. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."). As to the Engagement Agreement, that contract clearly provides that "all advice (written or oral) given by [B. Riley] to [Aspen] *is intended solely for the benefit and use of the Company (including its management, directors, attorneys, accountants, and advisors)*." (D.I. 20, Ex. B at 2) (emphasis added). Like all corporations, Aspen was "a legal entity entirely separate and distinct from the shareholders," *Barnett v. Kite*, 271 Va. 65, 70 (2006). Because Plaintiff has not shown that he was "a clearly and definitely intended beneficiary" of the Engagement Agreement, he does not have standing under this theory. *See Thorsen*, 292 Va. at 273.

Thus, both of Plaintiff's standing arguments are without merit and this Court would be required to dismiss the B. Riley claims even if the doctrine of res judicata did not apply.

### B. Motion to Stay

Markel argues that this action should be stayed because it has significant overlap with the 2016 case and the 2018 case and allowing litigation on this case to proceed would risk inconsistent decisions and wasting judicial resources. (D.I. 9 at 7). Plaintiff asserts that this case should be allowed to proceed because B. Riley is a necessary party, the equities relating to a stay have changed since the 2016 case was stayed, and the CVR Holders will be prejudiced if they cannot proceed on issues not related to valuation of the Contingent Value Rights. (D.I. 10 at 15–18).

The Court finds that a stay of litigation is appropriate in this case. As to the first issue, the Court finds that the arbitration proceedings currently underway in the 2016 case may simplify the issues for trial here. Plaintiff asserted three types of claims in this action: (1) claims which overlap

with those brought in the 2016 case and the 2018 case[7]; (2) claims based on Markel's actions in the prior litigation and arbitration[8]; and (3) the B. Riley claims, which will be dismissed as discussed above. Although there may not be complete overlap between the issues in this case and those in the 2016 case, the Court believes there is enough similarity between the causes of action such that the arbitration is likely to simplify some of the issues here. In particular, the conclusion of the arbitration will simplify the resolution of Plaintiff's claims relating to the process and outcome of the arbitration. Second, the present case is in its nascent stages. Plaintiff filed this case on June 5, 2020, there is no trial date set or schedule entered, and no party has conducted any discovery. Finally, the Court finds that Plaintiff is unlikely to suffer undue prejudice and, further, that Markel is unlikely to gain an unfair tactical advantage from a stay of this litigation pending completion of the arbitration in the 2016 case, in which the parties have committed to participate in good faith. (*See* D.I. 130 ¶ 12 in C.A. No. 16-808). Therefore, this case will be stayed pending resolution of the arbitration underway in the 2016 case.

Markel also asks that Plaintiff be sanctioned, arguing that filing this action puts Plaintiff in contempt of court orders. The Court disagrees. "[C]ivil contempt is a severe remedy [and] principles of basic fairness require that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019)

---

[7]  All three cases allege that Markel breached the CVR Agreement. (D.I. 1 ¶¶ 28–43 in C.A. No. 16-808; D.I. 1 ¶¶ 52–54 in C.A. No. 18-1777; D.I. 20 ¶¶ 117–29). Both the 2016 case and this case allege that Markel made fraudulent misrepresentations prior to the filing of the 2016 case. (D.I. 1 ¶¶ 49–52 in C.A. No. 16–808; D.I. 20 ¶¶ 130–38).

[8]  The Amended Complaint raises a claim of breach of fiduciary duty based on misrepresentations to the Court in prior litigation, (D.I. 20 ¶¶ 145–48), seeks an accounting based on the contingent value rights, (*id.* ¶¶ 139–44), and requests a declaratory judgment and an injunction both directed at the process of the arbitration currently underway in the 2016 case, (*id.* ¶¶ 149–67).

(citations, quotation marks, and brackets omitted). Although this Court has stayed previous litigation and denied Plaintiff's efforts to conduct discovery on the earlier cases, there has not been an explicit court order prohibiting Plaintiff from filing a new action. Thus, the Court is not prepared to find Plaintiff in contempt at this time. Further case filings by Plaintiff, however, may be met with sanctions.

### IV.   CONCLUSION

For the foregoing reasons, this Court will: (1) grant B. Riley's motion to dismiss (D.I. 24); (2) dismiss the B. Riley parties from the case; (3) grant Markel's motion to stay (D.I. 8); and (4) stay the case pending resolution of the arbitration under Section 3.2 of the CVR Agreement. An appropriate order will follow.